IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § § | SA-20-CR-00143-OLG |
| vs. | § § § | |
| (1) ALFONSO CANO-TOVAR, | § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Motion to Suppress [#38], which was referred to the undersigned for a report and recommendation pursuant to Western District of Texas Local Rule CV-72 and Appendix C. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's Motion to Suppress [#38] be **DENIED**.

**I. Background**

Defendant Alfonso Cano-Tovar ("Cano") was indicted on March 4, 2020, on three counts of transporting and conspiring to transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A). The indictment resulted from an investigatory stop by Border Patrol agents near Encinal, Texas. Cano was found to be the driver of a pickup truck containing four undocumented Mexican nationals confessing to have recently crossed illegally into the United States. Cano now moves to suppress all evidence and statements obtained as a result of what he alleges was an illegal seizure. Cano argues that the border patrol agents who stopped his vehicle lacked reasonable suspicion or probable cause to believe that illegal activity was afoot.

The Government responds that the motion to suppress should be denied on its merits because the Border Patrol had reasonable suspicion to justify the investigatory stop and seizure of Cano.  In addition, the Government challenges Cano's standing to challenge the seizure because Cano was driving a stolen vehicle, in which he has no expectation of privacy, and that the evidence, even if the fruit of an illegal seizure, is nonetheless admissible under the inevitable discovery doctrine.

The Court held a hearing on the motion on November 10, 2020, at which counsel for both parties and Cano were present and at which Border Patrol Agent Paul Silva provided live testimony.  At the close of the hearing, the Court instructed the parties that they could submit post-hearing written briefing within seven days.  In issuing this recommendation, in addition to considering the Government's response to Cano's motion [#41] and Cano's reply in support [#46], the undersigned has also considered the Government's Memo Following Suppression Hearing [#58].

## II.  Legal Standard

The Fourth Amendment protects against unlawful searches and seizures and extends to brief investigatory stops of persons or vehicles that fall short of a traditional arrest.  *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)).  Because Cano was seized without a warrant, the Government bears the burden to prove by a preponderance of the evidence that the seizure complied with the Fourth Amendment.  *United States v. Jeffers*, 342 U.S. 48, 51 (1951); *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

A temporary detention of a vehicle occupant for investigatory purposes is constitutional if, at a minimum, the Border Patrol agent reasonably suspects that the occupant of the vehicle is involved in illegal activity.  *Guerrero-Barajas*, 240 F.3d at 432.  Reasonable suspicion is

something less than probable cause, but something more than an agent's "hunch." *United States v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Suspicion is reasonable if, taking into consideration the totality of the circumstances, it is based on specific and articulable facts and the rational inferences that can be drawn therefrom. *Guerrero-Barajas*, 240 F.3d at 432.

In the context of investigatory stops by Border Patrol agents, the Supreme Court has articulated a list of non-exclusive factors for courts to consider in assessing reasonable suspicion. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884–85 (1975). These factors include the following: (1) the agent's experience in detecting illegal activity; (2) proximity of the area where the investigatory stop occurred to an international border; (3) the area's known characteristics for illegal activity; (4) information about recent illegal activity in the area; (5) the area's usual traffic patterns; (6) erratic driving or obvious attempts to evade agents; (7) the type of vehicle and other characteristics of the vehicle known to the agents to be frequently used in illegal activity including whether the vehicle is riding low or its suspension is modified; and (8) the number, appearance, and behavior of the occupants of the vehicle. *Guerrero-Barajas*, 240 F.3d at 432–33 (listing *Brignoni-Ponce* factors).

### III. Testimony and Evidence

The evidence and testimony of Border Patrol Agent Paul Silva presented at the hearing established the following facts by a preponderance of the evidence. On the afternoon of February 13, 2020, the Cotulla Border Patrol Station received a phone call from the Encinal Police Department stating that a concerned citizen had seen four possible illegal aliens load in a white, older Ford pickup truck near the Ranch House Café heading west on Highway 44 towards Highway 83. The Ranch House Café is a restaurant located on an otherwise undeveloped stretch of highway in South Texas and has been closed for an extended period of time. The area where

the restaurant is located is in close proximity to the Mexican border in an area where there are very few roads and very little local traffic and is a known hot spot for alien smuggling. Agent Silva, a Border Patrol agent with 23 years of experience, testified that aliens enter at this point of the border because it is north of both the border checkpoint in Laredo, Texas, and an additional checkpoint on Highway 83. He further testified that the parking lot of the Ranch House Café is specifically known as a meeting place for loading illegal aliens who have recently crossed the border into vehicles. Although Silva did not testify to the precise number of miles between the Ranch House Café and the border, he testified that the area is accessible by foot by those crossing the border. A map of the area used as a visual aid at the Court's hearing demonstrates that the town of Laredo, which is approximately 43 miles from the Ranch House Café, is a significantly longer distance from the Café than the closest portion of the Mexican border.[1]

At approximately 3:15 p.m. on the day in question, Agent Silva was conducting a roving patrol around the intersection of Interstate 35 and Route 133 when he heard the report on his service radio about the white pickup truck possibly loaded with illegal aliens. The report indicated that the truck was seen headed west on Highway 44 towards Highway 83, an intersection about five miles west of the Ranch House Café. Route 133, where Agent Silva was patrolling, runs parallel to Highway 44 and also intersects with Highway 83 to the north. In response to the report, Silva drove toward Highway 83 and headed south, hoping to intercept the vehicle.

According to Silva, Border Patrol Agent Ezequiel Ramirez was the first to spot the vehicle heading north on Highway 83, away from the border. He reported the vehicle's location

---

[1] This Court may also take judicial notice of publicly available maps of the area in issue, as the distances from the border of the Café and the highway intersections described are the types of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

to Agent Fred Martinez, Jr., another roving Border Patrol Agent in the area, who also saw the vehicle traveling north.  Agent Silva, who was parked on the side of the road at the time, heard Ramirez and Martinez both confirm over radio communication that the vehicle matched the description heard on the service radio.  Agent Ramirez further relayed that he had seen both a driver and a front-seat passenger in the truck's cab.  When the vehicle reached Agent Silva's location approximately two or three minutes later, however, Silva observed only a driver in the vehicle; no passenger was visible.  At that point, Silva became increasingly suspicious that the vehicle contained illegal aliens hiding from Border Patrol.  He pulled out behind the vehicle, identified the license plate number, and ran a search on the registration.  The vehicle was approaching a sharp 90-degree turn and was traveling at a fairly high speed.  At that point, Agent Silva activated his lights and decided to pull over the vehicle.  When Silva approached the vehicle, he saw several individuals laying in the rear of the cab of the truck and the front passenger crouched between the dashboard and the front seat.

  Although the results from the license plate search had not yet come through at the time of the stop, Agent Silva obtained the vehicle's Vehicle Identification Number ("VIN") and discovered that it did not match the license plate.  When he later ran the VIN in his system, he discovered the vehicle had been stolen.  The results of the license plate check ultimately established that the license plate affixed to the stolen truck was associated with a silver Ford pickup.  Agent Silva testified that if he had discovered the mismatched license plate while on roving patrol, he would have pulled over the vehicle on suspicion that the driver had intentionally switched the plates because the vehicle was likely stolen and was hiding illegal aliens.

Cano and the other occupants of the vehicle were taken to the Cotulla Border Patrol Station for further processing. At the station, several of the passengers admitted to being from Mexico and having recently crossed illegally into the United States. Cano was advised of his *Miranda* rights and gave a statement to Border Patrol agents admitting that he was hired to drive the aliens and that the truck and gas money were provided to him for the purpose of smuggling the aliens.

## IV.  Analysis

The Government contends that Cano lacks standing to challenge the lawfulness of his stop because Cano had no expectation of privacy in the vehicle he was driving because it was stolen. The Government also argues that Agent Silva had reasonable suspicion to conduct the investigatory stop and ultimate seizure of Cano, and, in any event, would have inevitably discovered that the vehicle was stolen, which would have provided an independent basis for the stop. For the reasons that follow, the undersigned concludes that the Government's standing challenge is meritless, but that the Government has nonetheless established by a preponderance of the evidence that Agent Silva had the requisite reasonable suspicion of illegal activity to pull over Cano. Therefore, the inevitable discovery argument need not be reached, and Cano's motion to suppress should be denied.

**A.     Standing**

The Government argues that Cano lacks standing to challenge the investigatory stop leading to his arrest because the vehicle he was driving was stolen. To establish standing to challenge a search and seizure under the Fourth Amendment, a defendant must demonstrate a legitimate expectation of privacy that was violated by the challenged Government conduct. *See generally United States v. Parks*, 684 F.2d 1078 (5th Cir. 1982) (citing *Katz v. United States*, 389

U.S. 347 (1967)). Cano bears the burden of establishing that he had a reasonable and legitimate expectation of privacy related to his seizure. *Barry v. Freshour*, 905 F.3d 912, 914 (5th Cir. 2018).

In support of its argument that Cano lacks standing, the Government directs the Court to the Fifth Circuit's decision in *United States v. Lanford*, in which the Fifth Circuit held that the possessor of a stolen automobile lacks a legitimate expectation of privacy *in the vehicle* to challenge the search of that vehicle. 838 F.2d 1351, 1353 (5th Cir. 1988). The Fifth Circuit distinguished a vehicle search from a search of the person, explaining that the driver of a stolen vehicle "does, of course, have standing to challenge the search of his person." *Id.* The search at issue in *Lanford* involved the search of the stolen vehicle, which resulted in the discovery of over four thousand dollars and the ultimate indictment of the driver of the vehicle for robbery of a federally-insured savings and loan and the interstate transportation of a stolen vehicle. *Id.* at 1352–33. The principle established in *Lanford* has been applied repeatedly in this Circuit to deny motions to suppress where a defendant is attempting to challenge the search of stolen property. *See, e.g.*, *United States v. Guevara*, 448 Fed. App'x 453, 457 (5th Cir. 2011) (denying motion to suppress because defendant lacked standing to challenge the search of the contents of a stolen camera found in his vehicle during search); *United States v. Cates*, 641 F. Supp. 2d 613, 616 (N.D. Tex. 2009) (denying motion to suppress where defendant failed to establish legitimate expectation of privacy in search of vehicle, which resulted in discovery of a firearm on the driver's side floorboard).

Contrary to the Government's arguments, however, *Lanford* is inapposite because the evidence Cano seeks to suppress through his Fourth Amendment challenge was not obtained as a result of a search of stolen property. The Government attempts to argue that it was the search of

7

the stolen truck that resulted in the discovery of the illegal aliens Cano was hired to transport. But the testimony provided by Agent Silva does not support the Government's characterization of Cano's encounter with Border Patrol. Agent Silva testified that he pulled over Cano and immediately saw the illegal aliens in the truck through the window when he approached the vehicle. The only item discovered as a result of a search was a personal use amount of methamphetamine discovered on Cano's person. As the Court clearly stated in *Lanford*, a defendant does not lose his ability to challenge a search of his person merely because he is in possession of stolen property or driving a stolen vehicle. 838 F.2d at 1353. Nor has the Government directed the Court to any authority suggesting that a defendant is prohibited from challenging his seizure through an investigatory stop or otherwise because he was at the time of the seizure in the possession of stolen property.

In defense of his standing to challenge his seizure, Cano argues that a traffic stop results in the seizure of both the driver and passenger alike, and that both individuals have standing to challenge the stop as unconstitutional, even where the passenger lacks a privacy interest in the car and does not have standing to challenge the search of the vehicle. *See United States v. Grant*, 349 F.3d 192, 195–96 (5th Cir. 2003). Cano has established that although he would have lacked standing to challenge the search of the stolen truck (had one occurred), he does have standing to challenge the stop resulting in the seizure of his person to argue for the suppression of the observation of the illegal aliens in plain view and the statements both the aliens and Cano provided during their seizure.

B.     **Fourth Amendment Challenge**

Although Cano has established his standing to challenge the investigatory stop leading to his indictment for alien smuggling, the Government has also established by the preponderance of

the evidence that Agent Silva had reasonable suspicion, based on the totality of the circumstances, to stop Cano and investigate whether he was engaged in illegal activity. Applying the *Brignoni-Ponce* factors to the instant case, the evidence establishes that Agent Silva has over twenty years of experience working as a Border Patrol agent detecting the specific type of illegal activity at issue in this case. *See Guerrero-Barajas*, 240 F.3d at 432 (listing first factor as agent's experience in detecting illegal activity). As to the second factor, the area in which Agent Silva stopped Cano was in close "proximity" to the "international border" with Mexico, so close in fact that many illegal aliens travel across the border by foot in this area. *See id.* The Fifth Circuit has articulated a benchmark of 50 miles or less when evaluating closeness of a given location to an international border. *See United States v. Inocencio*, 40 F.3d 716, 722 n.7 (5th Cir. 1994). The fact that an encounter with Border Patrol occurs within this benchmark has been referred to as a "paramount factor" in assessing reasonable suspicion. *United States v. Soto*, 649 F.3d 406, 409 (5th Cir. 2011) (internal quotation and citation omitted). Regarding the third and fifth factors, the area's known characteristics for illegal activity and local traffic patterns, the undisputed testimony established that the area in which the stop occurred was a known "hot spot" for alien smuggling where there was minimal local traffic. *See Guerrero-Barajas*, 240 F.3d at 432.

The fourth factor, information regarding recent illegal activity in the area, contributed significantly to Agent Silva's reasonable suspicion that the vehicle Cano was driving was engaged in illegal activity. Under certain circumstances, anonymous tips such as the one relayed over the Border Patrol radio system, can demonstrate "sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop." *Navarette v. California*, 572 U.S. 393, 397 (2014) (internal quotation and citation omitted). One of the factors in determining whether a tip

is reliable such that it can be factored into the reasonable suspicion calculus is whether it can be corroborated in some manner by independent police work.  *Id.* at 398.  For example, in *Alabama v. White*, the Supreme Court held that an anonymous tip that a woman would drive from a particular apartment building to a specific motel in a brown Plymouth station wagon with a broken tail light and would be transporting cocaine was sufficiently reliable to create reasonable suspicion of criminal activity, even without any additional factors, because it accurately predicted future behavior and demonstrated a special familiarity with the woman's affairs.  496 U.S. 325, 332 (1990).

In assessing the reliability of anonymous tips to be on the lookout ("BOLO") for specific criminal activity, the Fifth Circuit has directed courts to evaluate several factors, including: (1) the credibility and reliability of the informant; (2) the specificity of the information contained in the tip or BOLO report; (3) the ability of officers in the field to verify the information in the field; and (4) whether the tip deals with active or recent activity.  *United States v. Perkins*, 352 F.3d 198, 199 (5th Cir. 2003).  Although Agent Silva did not provide any testimony regarding the credibility and reliability of the anonymous tip regarding possible alien smuggling, the tip was based on contemporaneous observation by a concerned citizen of someone loading four possibly illegal aliens in a white, older Ford pickup truck at a known location where alien smugglers pick up aliens having recently crossed the border on foot.  The tip in this case provided both a specific physical description of the truck and the direction it was traveling.  Independent investigatory work by Agents Ramirez, Martinez, and Silva corroborated the description of the truck and found it traveling in the direction described by the person providing the anonymous tip.  The tip in this case is distinguishable from those instances in which a tip encompasses only general allegations of illegal activity, lacks such specificity, and fails to

predict any future behavior that through corroboration by law enforcement confirms the tipster's credibility. *Cf. Florida v. J.L.*, 529 U.S. 266, 272–74 (2000) (holding that bare-bones tip that young black male in plaid shirt standing at a bus stop was carrying a gun was insufficient to supply reasonable suspicion in support of investigatory stop where tipster did not explain how he knew about the gun and there was no means to independently assess tipster's credibility).

The final factor that is significant to the assessment of reasonable suspicion is the number, appearance, and behavior of the occupants in the vehicle. *Guerrero-Barajas*, 240 F.3d at 433. Agent Silva testified that his suspicion of possible illegal activity increased significantly when he encountered the truck and saw only a driver in the cab, as opposed to the two individuals seen only minutes earlier by Agents Ramirez and Martinez, and the four individuals seen by the person who made the anonymous tip. Accordingly, Agent Silva believed that the passengers in the vehicle had ducked and were presumably hiding after seeing Border Patrol vehicles on the roadway. The Fifth Circuit has recognized that an "affirmative indication of an attempt to hide," as opposed to mere slouching in a seat or bearing a suspicious facial expression, is required for this factor to weigh in favor of the presence of reasonable suspicion. *United States v. Zapata-Ibarra*, 212 F.3d 877, 883 (5th Cir. 2000). *Compare United States v. Soto*, 649 F.3d 406, 409–12 (5th Cir. 2011) (finding reasonable suspicion where, upon seeing agents, defendant looked surprised, ducked down, slumped back in his seat, and rolled up his tinted window) *with United States v. Rangel-Portillo*, 586 F.3d 376, 378–82 (5th Cir. 2009) (agent lacked reasonable suspicion to stop vehicle in an area known for drug smuggling only 500 yards from the border based solely on an observation that the occupants were "sweating pretty bad" and bore "stone-faced" expressions).

Viewing all of these facts under the totality of the circumstances, Agent Silva had reasonable suspicion to stop Cano to investigate the possibility that he was engaged in alien smuggling. His decision to stop Cano was based on specific and articulable facts and the rational inferences that can be drawn therefrom. *See Guerrero-Barajas*, 240 F.3d at 432. Because the Government has established reasonable suspicion by a preponderance of the evidence, the Court need not consider the Government's alternative argument that, once the results of Agent Silva's search of the license plate on Cano's vehicle came through revealing that the license plate was not registered to the vehicle, Agent Silva would have had an independent basis to conduct the investigatory stop.

## V.  Conclusion and Recommendation

Having considered Cano's motion, the response and reply thereto, the Government's supplemental briefing, the testimony, evidence, and argument presented at the hearing, and the governing law, the undersigned recommends that Defendant's Motion to Suppress [#38] be **DENIED**.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which

objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 18th day of November, 2020.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE